IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID VAUGHAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:06-cv-0626 |
| ) | Judge Trauger |
| UNITED PARCEL SERVICE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment (Docket No. 17) filed by the defendant, United Parcel Service, to which the plaintiff has responded (Docket No. 25) and the defendant has replied (Docket No. 27). For the reasons discussed herein, the defendant's motion will be denied.

## FACTUAL BACKGROUND

At all relevant times, plaintiff David Vaughan was employed by defendant United Parcel Service ("UPS") as a Part-Time Supervisor at UPS's Whites Creek Hub.[1] In that role, the plaintiff worked shifts of five and one-half hours and was responsible for walking through the hub to ensure quality control as packages were loaded onto trucks, clearing package jams on the

---

[1]Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1), the parties' summary judgment briefs (Docket Nos. 18, 25, and 27), and Plaintiff's Responses to Defendant's Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment (Docket No. 26). Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

1

hub's conveyer belts, building "package walls" of boxes, and training new employees by demonstrating how to build package walls. The essential functions of a Part-Time Supervisor position include the abilities to stand and walk up to five and one-half hours per day, to "lift, lower, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds," and to "lift packages to heights above the shoulder." (Vaughan Dep. Ex. 6)

In August 2004, the plaintiff suffered an injury to his neck and shoulder while attempting to clear a package jam at work. The plaintiff provided the defendant with notice of his injury and obtained medical treatment. He returned to work in October 2004 with certain medical restrictions. Given his restrictions, the defendant permitted the plaintiff to return to "light duty" work and excused the plaintiff from performing duties that involved lifting heavy packages, lifting packages over shoulder height, and clearing package jams.

In March or April 2005, the plaintiff underwent surgery related to his injury. He returned to work in July 2005, again with medical restrictions, and again was permitted to perform only light duty work.

In October 2005, the plaintiff's doctor issued permanent work restrictions for the plaintiff. The restrictions prohibited the plaintiff from standing or walking for longer than two to four hours, from lifting more than ten to twenty pounds more than occasionally, and from doing any lifting over shoulder height. (Vaughan Dep. Ex. 5) After receiving the plaintiff's permanent work restrictions, UPS's Occupational Health Supervisor, Lois Forsmo, compared the plaintiff's permanent restrictions to the essential functions of his position as a Part-Time Supervisor. Forsmo concluded that, given his permanent restrictions, the plaintiff would be unable to return to work as a Part-Time Supervisor. She then sought the input of the plaintiff's direct manager,

2

Brad Scott, and he concurred with her conclusion. Scott then informed the plaintiff that he would not be able to return to his job because his permanent restrictions prevented him from performing the essential functions of a Part-Time Supervisor.

After learning that he would not be able to return to work as a Part-Time Supervisor, the plaintiff approached his worker's compensation case worker, Stephanie Capley, to determine whether he was eligible for a human resources position or another position at UPS that did not involve lifting heavy boxes. (Vaughan Dep. at 88-89, 91) According to the defendant, Capley informed him that there were no such positions available, and that no one was able to meet with the plaintiff to discuss the matter further. (Vaughan Dep. at 91-92; *see also* Vaughan Dep. at 118, 126-27)

On June 1, 2006, the plaintiff voluntarily separated from his employment with UPS as part of the settlement of a workers' compensation lawsuit. He brought this suit shortly thereafter.

## ANALYSIS

The plaintiff claims that he was subjected to discrimination on the basis of disability in violation of Title I of the Americans with Disabilities Act of 1990.[2] The defendant has moved for summary judgment.

I.      **Summary Judgment Standard**

---

[2] The plaintiff alleges that his claims are also based on Title I of the Civil Rights Act of 1991 to the extent that that statute is incorporated by reference in the Americans with Disabilities Act. (Docket No. 1 ¶¶ 2, 6, 12). The plaintiff additionally alleges jurisdiction under the Tennessee Handicapped Discrimination Act, although he does not base any claims on that statute. (Docket No. 1 ¶ 2)

3

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac*

4

*Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

## II.     Plaintiff's Discrimination Claim

The Americans with Disabilities Act ("ADA") prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). ADA claims are evaluated according to the burden-shifting structure set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Plant v. Morton Intern, Inc.*, 212 F.3d 929, 936 (6th Cir. 2000). Under *McDonnell Douglas*, the court must first determine whether the plaintiff has demonstrated a *prima facie* case of discrimination. 411 U.S. at 802. If the plaintiff demonstrates a *prima facie* case, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for its actions. *Id*. If the defendant succeeds, the burden shifts back to the plaintiff to demonstrate that the reason offered by the defendant for its actions was not its true motivation, but rather, a pretext for discrimination. *Id*.

To establish a *prima facie* case for unlawful discrimination under the ADA, the plaintiff must show that (1) he is an individual with a disability, (2) he is otherwise qualified to perform

5

the essential functions of the job, with or without reasonable accommodation, and (3) he was discharged as a result of that disability. *See Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001); *Walsh v. United Parcel Serv.*, 201 F.3d 718, 724 (6th Cir. 2000); *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). The defendant here contends that the plaintiff has failed to establish the first two elements of a *prima facie* case of discrimination. (Docket No. 18 at 6)

*A. Individual with a Disability*

Under the ADA, a disability is defined as (1) "a physical or mental impairment that substantially limits one or more of the major life activities," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 459-60 (1999).

The plaintiff alleges that he is an individual with a disability under each of these definitions. (Docket No. 1 ¶ 16; Docket No. 25 at 5) The defendant does not dispute that the plaintiff was subject to a physical impairment as a result of his injury; it does, however, dispute that this impairment limits the plaintiff's participation in major life activities and that the degree of any such limitation is substantial. (Docket No. 18 at 7-13) As both of these issues affect the plaintiff's ability to recover on his claims under either of the first two ADA definitions of a disability, both will be addressed in detail below.

The plaintiff's argument that he was regarded as having an impairment, however, may be dismissed out of hand. To establish that he was regarded as having an impairment, the plaintiff must demonstrate that the defendant either mistakenly believed that he had a physical impairment substantially limiting a major life activity or mistakenly believed that his actual

6

impairment substantially limited a major life activity. *Sutton*, 527 U.S. at 489. In either case, the defendant must have "entertain[ed] misperceptions about the individual." *Id.* at 489; *see also Mahon v. Crowell*, 295 F.3d 585, 592-93 (6th Cir. 2002) ("To run afoul of the act . . . a covered entity must hold a mistaken belief that a claimant is disabled within the meaning of the [ADA]."). Here, though the plaintiff asserts repeatedly that the defendant was aware of his impairment, he never claims that the defendant's perception was erroneous. Indeed, because the plaintiff claims that he was *in fact* impaired and that his impairment did *in fact* limit a major life activity, the plaintiff logically is foreclosed from asserting that he was *mistakenly* regarded as disabled by the defendant. *See Sutton*, 527 U.S. at 489 ("[The employer] must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.").

        1.        Major life activities

According to the ADA's implementing regulations, "major life activities" include, but are not limited to, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Additionally, courts have treated activities including sleeping, *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 314-15 (6th Cir. 2001), lifting, and standing, *Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997), as major life activities.

To the extent that the plaintiff alleges that he is limited in activities such as playing sports, hunting, golfing, coaching softball, doing home repairs and yard work, and "roughhousing" with his children, (Vaughan Dep. Ex. 11), the plaintiff has not stated a claim because such activities do not constitute major life activities. The plaintiff variously asserts,

7

however, that his impairment substantially limits his ability to sleep, lift, walk, stand, and perform manual tasks, (Docket No. 25 at 4; Vaughan Dep. Ex. 11), all of which constitute major life activities under the ADA.

Finally, the plaintiff asserts that his ability to work is limited by his impairment. (Docket No. 25 at 4-5) Some courts, including the Supreme Court, have questioned the logic of treating working as a major life activity under the ADA. *See, e.g.*, *Sutton*, 527 U.S. at 492 ("We note . . . that there may be some conceptual difficulty in defining 'major life activities' to include work, for it seems 'to argue in a circle . . .'") (quotation omitted); *Mahon*, 295 F.3d at 590 ("As a major life activity . . . 'working' is problematic."). Regardless, the ADA's implementing regulations describe working as a major life activity, 29 C.F.R. § 1630.2(i), and the Sixth Circuit has treated working as a major life activity in a number of cases, *see, e.g.*, *Mahon*, 295 F.3d at 590; *Dunaway v. Ford Motor Co.*, 134 Fed. Appx. 872, 879 (6th Cir. 2005) (noting that "this Court has evaluated working as a major life activity under the ADA" and listing cases).

There is no reason to depart from these precedents treating working as a major life activity. It is noteworthy, however, that courts often treat working as a "residual" life activity, and will consider whether a limitation on work is substantial only in the event that a plaintiff has not demonstrated a substantial limitation with respect to any other major life activity. *See, e.g.*, *Sutton*, 527 U.S. at 492; *Gerton v. Verizon South Inc.*, 145 Fed. Appx. 159, 167 (6th Cir. 2005); *Hayes v. United Parcel Serv.*, 17 Fed. Appx. 317, 320 (6th Cir. 2001).

       2.       Substantial limitation

The plaintiff has established that his impairment limits his ability to engage in the major life activities of sleeping, lifting, walking, standing, performing manual tasks, and working. For

8

his claims to survive, however, he must also establish, at least, a genuine question as to whether those limitations are substantial.

To determine whether the degree of limitation experienced by the plaintiff is substantial, "courts should consider the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or expected permanent or long term impact, of the impairment." *Penny*, 128 F.3d at 414 (citing 29 C.F.R. § 1630.2(j)(2)). Additionally, courts should consider the impact of a limitation in the light of any remedial measures that may reduce the effect of the plaintiff's impairment. *Sutton*, 527 U.S. at 482 ("[I]f a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity . . ."). As the question of whether an individual is disabled under the ADA is an "individualized inquiry," a restriction or condition that may render one individual disabled may not render another disabled. *See Sutton*, 527 U.S. at 483; *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 253 (6th Cir. 2000) (affirming district court finding that the plaintiff was disabled as a result of a lifting restriction that limited his ability to work, though in other cases plaintiffs with such restrictions were found not to be disabled).

First, the plaintiff has failed to establish a substantial limitation of his ability to sleep. The plaintiff only alleges that he sometimes has trouble falling asleep when he does not take medication prescribed for that purpose. (Vaughan Dep. at 160) This is insufficient to establish a substantial limitation under the ADA. *See Sutton*, 527 U.S. at 482; *Swanson*, 268 F.3d at 316

9

(holding that plaintiff's ability to sleep was not substantially limited where "the quality of his sleep improved" when he took medication prescribed for that purpose).

The plaintiff also asserts that he is substantially limited in his ability to lift, walk, and stand. (Docket No. 25 at 4; Vaughan Dep. Ex. 11) With respect to lifting, "the general rule in this circuit is that a weight restriction alone is not considered a disability under the ADA." *Olds v. United Parcel Serv., Inc.*, 127 Fed. Appx. 779, 782 (6th Cir. 2005). In addition, with respect to walking, "moderate difficulty or pain experienced while walking does not rise to the level of a disability." *Penny*, 128 F.3d at 415. Here, the plaintiff provides very little evidence about the extent to which his impairment limits his ability to lift, walk, or stand, other than referring to the medical restrictions placed on his ability to work. Those restrictions prohibit him from lifting more than twenty pounds occasionally and from walking or standing more than four hours a day. This degree of limitation can hardly be regarded as substantial. As the Sixth Circuit has noted, to classify as disabled an individual who "cannot lift heavy objects or stand for long periods of time . . . would require a broad definition of disability—a definition that would cover almost anyone who suffers from back problems." *Adams v. Potter*, 193 Fed. Appx. 440, 444 (6th Cir. 2006). The plaintiff thus has failed to establish that his ability to lift, walk, or stand is substantially limited.

The plaintiff next claims that his ability to perform manual tasks is substantially limited. (Docket No. 25 at 4) For this claim to survive, the plaintiff must be "unable to perform the variety of tasks central to most people's daily lives," rather than simply being "unable to perform the tasks associated with [his] specific job." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200-01 (2002); *Gerton*, 145 Fed. Appx. at 166. The plaintiff has not satisfied that standard.

10

The manual tasks he is limited in—for example, lifting packages of up to seventy pounds over his head—are related to his job as a Part-Time Supervisor. He does not allege that he has any difficulty in the manual tasks central to daily life, such as getting dressed, brushing his teeth, or combing his hair. Thus, he has not established an ADA claim with regard to the major life activity of performing manual tasks.

Finally, the plaintiff alleges that, to the extent that he cannot lift more than twenty pounds occasionally and cannot lift overhead at all, his ability to work is substantially limited. (Docket No. 25 at 4-5) As the plaintiff has not demonstrated that he is substantially limited with respect to any other major life activity, an analysis of this claim is appropriate. *See Hayes*, 17 Fed. Appx. at 320. To establish that he is substantially limited in his ability to work, the plaintiff must demonstrate that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(ii)(B); *see also Sutton*, 527 U.S. at 491 (stating that, "at the minimum" the plaintiff must show that he was "unable to work in a broad class of jobs"). It is insufficient if the plaintiff merely is limited in his ability to work in "one type of job, a specialized job, or a particular job of choice." *Sutton*, 527 U.S. at 492. This test requires consideration of "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.2(j)(3)(ii)(B); *see also Burns*, 222 F.3d at 254.

The plaintiff here provides a laundry list of jobs that he cannot perform as a result of his impairment, including "most construction work, landscaping, loading and unloading boxes in a

11

business, working in a post office, working in a grocery store, working in a factory, working in maintenance jobs, working for business [*sic*] that sell parts and supplies and working with a computer." (Docket No. 25 at 4-5) The Sixth Circuit has stated that an individual with a back condition may be substantially limited in his ability to work if the condition "prevents the individual from performing any heavy labor job," even if the individual might be able to perform jobs in another class. *Henderson*, 247 F.3d at 652. Although the plaintiff has provided relatively little evidence about his qualifications, skills or abilities, and it is a relatively close question, the plaintiff has raised a genuine issue of material fact that he is substantially limited in his ability to work in the class of jobs involving heavy labor and thus has established the first element of a *prima facie* case of discrimination under the ADA.

B.     *Reasonable Accommodation*

To assert a valid discrimination claim under the ADA, the plaintiff must demonstrate not only that he was disabled, but also that he was "qualified to perform the essential functions of the job, with or without reasonable accommodation." *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633 (6th Cir. 1998); *see also Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). The plaintiff can establish this by showing that he can in fact perform the essential functions of the job, that the functions that he cannot perform are not essential, or that the defendant failed to provide him with a reasonable accommodation. *See Monette*, 90 F.3d at 1182. Here, the plaintiff does not dispute that the essential functions of his job as a Part-Time Supervisor included the abilities to walk and stand for over five hours at a time and to lift packages of up to seventy pounds to heights above his shoulders. (Docket No. 26 ¶¶ 1, 11) He further does not dispute that his permanent medical restrictions prevented him from engaging in

12

these activities. (*Id.* ¶¶ 15-16) Instead, the plaintiff claims that the defendant failed to reasonably accommodate his disability.

To establish that the defendant did not reasonably accommodate him, the plaintiff "bears the initial burden of proposing an accommodation and showing that *that* accommodation was objectively reasonable." *Monette*, 90 F.3d at 1183 (discussing 42 U.S.C. § 12112(b)(5)(A)) (emphasis in the original). If the plaintiff carries this burden, the burden shifts to the defendant to demonstrate that the proposed accommodation would pose an undue hardship. *See id.* To carry his initial burden, the plaintiff "must identify the precise limitations and potential reasonable accommodations that could overcome them." *Lorubbio v. Ohio Dep't of Transportation*, No. 98-3578, 1999 U.S. App. LEXIS 10916, at *6 (6th Cir. May 21, 1999). He must show "that he requested, and was denied, reassignment to a position for which he was otherwise qualified." *Burns*, 222 F.3d at 258; *see also Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007) ("[T]o overcome summary judgment, the plaintiff generally must identify the specific job he seeks and demonstrate that he is qualified for the position.").

The plaintiff does not indicate that he ever sought or applied for an available alternative position at UPS for which he was otherwise qualified. In his deposition, the plaintiff noted that he had considered applying for a promotion, but that he had never applied for one. (Vaughan Dep. at 63) He further claims that he proposed to be transferred to a job as a Human Resources Interviewer or a Yard Control Supervisor, (Docket No. 25 at 10), but he does not demonstrate that such jobs were available at the time or that he was otherwise qualified for those jobs. His failure to propose an objectively reasonable accommodation thus prevents him from recovering on his discrimination claim under the theory that the defendant failed to reasonably

13

accommodate him.  *See Burns*, 222 F.3d at 258 (holding that the plaintiff's "failure to request a transfer to a new position for which he was otherwise qualified precludes him from recovering for discrimination under the ADA").

Although he has not shown that he requested and was denied an accommodation, the plaintiff's claim may yet survive if he demonstrates "that he requested and was denied some specific assistance in identifying jobs for which he could qualify."  *Id.* at 258.  The ADA's implementing regulations provide, "it may be necessary for [an employer] to initiate an informal, interactive process" to determine an appropriate reasonable accommodation.  29 C.F.R. § 1630.2(o)(3).  That process "requires communication and good-faith exploration of possible accommodations."  *Kleiber*, 485 F.3d at 871 (quotation and citation omitted).  Therefore, the plaintiff may show that the defendant failed to reasonably accommodate his disability if he shows that he "could have been reasonably accommodated but for the employer's lack of good faith."  *Breitfelder v. Leis*, 151 Fed. Appx. 379, 386 (6th Cir. 2005) (quotation and citation omitted).

The plaintiff alleges that the defendant did not engage in an interactive process, as required by the ADA, to help identify any positions that would constitute a reasonable accommodation.  (Docket No. 25 at 9-10)  The plaintiff testified at his deposition that, after learning that he would not be able to continue working as a Part-Time Supervisor as a result of his work restrictions, he approached his workers' compensation case worker about securing a position that did not involve lifting heavy boxes.  (Vaughan Dep. at 88)  Indeed, the plaintiff even suggested specific jobs that he believed would constitute a reasonable accommodation.  (*Id.* at 91)  According to the plaintiff, his case worker informed him that there were no such jobs

14

available, and that "[t]hey won't even discuss it." (*Id.*)  The plaintiff further claims that he asked his case worker if there was anyone with whom he could discuss possible accommodations, and that the case worker stated "there was nobody that would meet with me." (*Id.* at 92)  The plaintiff asserts that his attempts to discuss accommodations with the defendant consistently were rebuffed, as no one would return his phone calls or meet with him about an accommodation. (*Id.* at 118, 126-27)

      The defendant presents scant evidence that contradicts the version of these events set forth by the plaintiff.  The defendant does not address the plaintiff's allegations that his calls were not returned or that his requests for a meeting were ignored.  During her deposition, the case worker testified that her interactions with the plaintiff were limited to discussing "work conditioning" to determine whether the plaintiff's impairment would improve such that he could resume his job as a Part-Time Supervisor. (Capley Dep. at 7-8)  The case worker's testimony does not, as the defendant claims, indicate that the plaintiff *failed* to request assistance in identifying a possible accommodation; she simply testified that she *did not* discuss any potential accommodations with the plaintiff, stating, "[t]ypically we go strictly by the essential job functions which were in place." (*Id.* at 7)  Moreover, the case worker intimated that she *would not have* discussed any potential accommodations with the plaintiff once his permanent restrictions were in place. (*Id.* at 8 ("[After the plaintiff received his permanent restrictions,] there was no conversation about returning him to work at that point.  And there would not have been, with the restrictions that he had on him, if I recall correctly."))

15

At the very least, drawing all inferences in favor of the nonmoving party, here the plaintiff, the case worker's testimony evidences a factual dispute between the parties that renders summary judgment inappropriate.[3]

The defendant does assert that no jobs in the areas proposed by the plaintiff were available at the time that the plaintiff requested such an accommodation. (Docket No. 18 at 15-16) That may well be the case; however, the defendant's obligation to participate in an interactive process was "triggered by the [plaintiff's] request" for an accommodation or for assistance identifying an accommodation. *Clark v. Whirpool Corp.*, 109 Fed. Appx. 750, 755 (6th Cir. 2004). Given the case worker's tepid response to the plaintiff's repeated requests for assistance in identifying jobs and evidence the defendant's general lack of cooperation when the plaintiff attempted to engage the defendant, the plaintiff has raised a genuine issue of material fact that the defendant failed to participate in an interactive process to identify a reasonable accommodation. Thus, the plaintiff has established the second element of a *prima facie* case of discrimination under the ADA. As the defendant has not argued or otherwise demonstrated that there is a legitimate, nondiscriminatory reason for its decision, summary judgment is not warranted.

---

[3]The testimony of the plaintiff's direct manager that he never discussed a possible accommodation with the plaintiff, (Scott Dep. at 23-24), and the testimony of UPS's Occupational Health Supervisor that the plaintiff never approached her to discuss a possible accommodation, (Forsmo Dep. at 5-7), likewise merely demonstrate that there is a factual dispute that is not appropriately resolved on summary judgment.

16

## **CONCLUSION**

The plaintiff has raised a genuine issue of material fact as to whether the defendant discriminated against him on the basis of disability. As such, the defendant's Motion for Summary Judgment will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

17